**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JODI S. BURBAGE, ) | Civil Action No.: 2:23-cv-3216-DCN-MHC |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | **Violation of the Rehabilitation Act** |
| ) | **of 1973: Termination, Retaliation** |
| CHERYL L. GRAHAM, Dorchester County ) | **and Failure to Accommodate** |
| Clerk of Court, and ) | |
| DORCHESTER COUNTY, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |
| _____ ) | |

The plaintiff above named, by and through undersigned counsel, complains of the acts of the defendants as follows:

### PARTIES AND JURISDICTION

1. That the plaintiff is a citizen and resident of the County of Dorchester, State of South Carolina.

2. That, the defendant Cheryl L. Graham ("Graham" or "defendant") is the Clerk of Court of defendant Dorchester County (South Carolina) and an elected official. Defendant Dorchester County is a county in the State of South Carolina. Both defendants received financial assistance, monies and/or funds, directly or indirectly, from the federal government during the time of the discriminatory actions alleged herein.

3. That this court has federal question jurisdiction of the above-styled action pursuant to 29 U.S.C. § 794 (the Rehabilitation Act of 1973) and 28 U.S.C. § 1331.

1

4. That venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division, as defendants reside and do business there; plaintiff resides there; and a substantial portion of the facts giving rise to plaintiff's claims occurred there.

## FACTUAL ALLEGATIONS

5. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 4 hereinabove as fully as if set forth verbatim.

6. That in or around 2011 defendants hired plaintiff as a Family Court Clerk to work at the Dorchester County Family Court in Summerville, South Carolina.

7. That in or around 2016 plaintiff requested to be transferred to defendants' St. George, South Carolina location. Defendants granted plaintiff's request and, in doing so, placed her in the position of Jury Coordinator for General Sessions (or criminal) and Civil Court.

8. That as a Jury Coordinator for General Sessions (or criminal) and Civil Court at defendants, plaintiff ran and oversaw the Jury Management System for both General Sessions and Civil Court during trials, and engaged in tasks which included, but were not limited to, attending courtroom proceedings on behalf of the Clerk of Court and performing administrative tasks pertaining to such proceedings.

9. That plaintiff's position was a non-supervisory position and mainly involved plaintiff interacting and communicating with others. As such, plaintiff's job at defendants was not a physically demanding one.

10. That plaintiff enjoyed her job at defendants and she enjoyed the people she worked with there and the people she assisted.

11. That as of the beginning of 2021, plaintiff still occupied the position of Jury Coordinator for the General Sessions and Civil Court at defendants. At the time, plaintiff worked with Becky Stevens ("Stevens"), the Chief Deputy, Civil Court who, to an extent, oversaw the Civil Court at defendants, although plaintiff handled all tasks related to juries, for both the Criminal and Civil Court. Stevens was not in plaintiff's chain of command.

12. That as far as plaintiff's chain of command in 2021, plaintiff reported directly to Tonda Westbury ("Westbury"), the Chief Deputy over the General Sessions Court. Westbury, in turn, reported to Teresa Hiers ("Hiers"), the Chief of Operations to the Clerk of Court. And both Stevens, the Chief Deputy, Civil Court, and Hiers reported directly to the Dorchester County Clerk of Court, the defendant Cheryl L. Graham, an elected official. Otherwise, though outside of the plaintiff's chain of command in 2021, plaintiff also had dealings with Christy Cribb ("Cribb"), an HR Generalist, and Cribb's supervisor Tammy Thompson ("Thompson"), the Human Resources Director.

13. That plaintiff performed her job duties at defendants in an above-satisfactory fashion and otherwise maintained an excellent employment record there. In this regard, plaintiff always received excellent overall scores on her annual performance evaluations at defendants, along with regular pay raises; plaintiff was never disciplined the entire time she worked at defendants; and plaintiff's supervisors routinely praised her work performance, telling plaintiff she did a good job.

14. That all went well for plaintiff at the defendants over the course of her employment there. As of 2021, plaintiff had been doing her job for a significant period of time and had become good at performing it.

15. That on or about August 18, 2021, matters took a sharp turn for the worse for plaintiff when she was diagnosed with Stage 3 rectal cancer.

16. That plaintiff immediately advised Hiers and Graham about her diagnosis and she further advised them that she would have to miss a significant amount of work going to doctors appointments and otherwise treating her serious illness.

17. That Graham and Hiers responded to plaintiff by assuring plaintiff, in strong, clear and mandatory terms, not to worry about her job until she was well enough to come back to work and that all would be fine in regard to her job while she was out of work on medical leave. Of course, plaintiff relied upon the above assurances and understood them to mean defendants would hold plaintiff's job open for her until she was well enough to work, for approximately another five (5) months or so after her FMLA leave expired.

18. That plaintiff's diagnosis was a serious and life-threatening one. The plaintiff was obviously very upset, concerned and scared, placing all of her focus on attempting to get well.

19. That pursuant to plaintiff's immediate request, defendants granted plaintiff FMLA leave from August 20, 2021 until September 10, 2021. However, due to plaintiff's health at the time and the seriousness of plaintiff's impairment, on or about September 9, 2021 plaintiff again requested, and defendants again granted, plaintiff additional FMLA leave from September 10, 2021 until November 11, 2021, which amounted to a total of twelve (12) weeks of leave.

20. That as such, as of November 11, 2021, plaintiff had used the full twelve (12) weeks of her FMLA leave available to her under the said Act.

21. That during the twelve (12) weeks that plaintiff was out on FMLA leave (from August 20, 2021 until November 11, 2021) plaintiff underwent rigorous and intense

treatments which made her tired and fatigued. To this point, plaintiff first underwent eight (8) weeks of radiation treatments – five (5) days a week – followed by chemotherapy, more radiation, and yet more chemotherapy. Thereafter, plaintiff was scheduled to have surgery sometime in December of 2021.

22. That to this end, on or about October 12, 2021, plaintiff sent correspondence to Cribb in Human Resources advising her that she was in the fourth (4th) week of cancer treatments and that she was scheduled to see her surgeon the following day regarding her first surgery.

23. That while out on FMLA leave, plaintiff kept Graham, Hiers and Westbury updated on her medical condition and treatment the best she could under the circumstances, typically via email,

24. That at some point during her twelve (12) weeks of FMLA leave, plaintiff advised defendants that her cancer surgery had been scheduled for December 31, 2021.

25. That on or about October 28, 2021, Cribb, defendants' HR Generalist, sent an email to plaintiff reminding plaintiff that her FMLA leave expired on November 11, 2021 and advising plaintiff that, if plaintiff could not return to work on that date, then she would have to apply for an extended leave of absence, in writing, through her department.

26. That due to the serious nature of plaintiff's impairments, and the rigorous nature of her treatments, plaintiff knew she would not be able to return to work by November 11, 2021.

27. That as such, on or about October 29, 2021, plaintiff took the only step defendants made available to her and the only step defendants made plaintiff aware of: she made a written request to Graham for an extension of her medical leave.

5

28. That thereafter, defendants, by and through Graham, upper management, and its Human Resources Department, advised plaintiff that it could only grant plaintiff an additional three (3) weeks of medical leave, if any, and that legally it could not grant plaintiff any more leave beyond the said three (3) weeks – a statement that was legally incorrect.

29. That on or about November 5, 2021, Graham sent an email to plaintiff acknowledging receipt of plaintiff's request for an extension of her leave; reminding plaintiff that her FMLA leave was due to expire November 11, 2021; and stating, "there is no extension of FMLA" (another legally incorrect statement). Although aware of the dire state of plaintiff's health, Graham did not give plaintiff an immediate answer, but, instead, advised plaintiff that she would consider plaintiff's request for additional leave and give plaintiff an answer in five (5) days, by November 9, 2021.

30. That as promised, on or about November 9, 2021, Graham sent correspondence to plaintiff stating that "After careful consideration she would grant plaintiff's request for extended leave until December 3, 2021" – or for what amounted to an additional three (3) weeks of leave.

31. That unfortunately, as of December 3, 2021, plaintiff was still not able or well enough to return to work. In fact, she had surgery scheduled for December 31, 2021 – a fact she had made the defendants aware of.

32. That on or about December 4, 2021 – one (1) day after plaintiff's leave expired – defendants' Human Resource Director, Thompson, called plaintiff at home and advised her that her extended leave had expired; that if plaintiff could not return to work immediately, the defendants could no longer hold her job open for her; and that, in that case, plaintiff would have to send in a letter of resignation immediately.

33. That plaintiff was still very frail and sick at the time, but responded to Thompson that she did not want to resign; that she was not going to resign; and that she intended to return to work as soon as she was able to return. Thompson replied that this was the way the defendants normally handled matters when an employee could not return to work after their medical leave expired.

34. That when plaintiff again advised Thompson that she did not want to resign and wanted to come back to work, Thompson replied, "No" and again advised plaintiff that she had to turn in her resignation letter immediately.

35. When plaintiff again objected to resigning, Thompson asked plaintiff, "Weren't you aware this was going to happen?" to which plaintiff candidly responded that she had been under a lot of stress and pressure and that it had not crossed her mind.

36. That finally, Thompson hesitantly told plaintiff that, if she did not send in a resignation letter, the defendants would have to terminate her.

37. That on or about December 8, 2021, Thompson sent plaintiff correspondence terminating plaintiff's employment because plaintiff had exhausted all twelve (12) weeks of her FMLA leave, and all three (3) weeks of her extended accommodation leave, and that she was "not eligible for any additional leave as required by state and federal law…and that the defendants were unable to continue to accommodate plaintiff's absences" (another legally incorrect statement).

38. That at no time did defendants, in granting plaintiff a three (3) week extension of plaintiff's medical leave, or in seeking plaintiff's resignation, or in the course of firing plaintiff, enter into dialogue (or any kind of interactive process) with the plaintiff about the nature of her disabilities and possible accommodations for plaintiff, including the amount of

7

duration of medical leave plaintiff sought or needed to accommodate her disabilities, all as required by the Rehabilitation Act. Moreover, at no time did anyone at defendants discuss the Rehabilitation Act with the plaintiff.

39. That on or about December 31, 2021 plaintiff underwent successful surgery related to her cancer.

40. That in or around March of 2022 plaintiff had a second surgery related to her disability, but this procedure was only to make it so plaintiff did not have to use a colostomy bag.

41. That plaintiff was able to return to work in or around April or May of 2022, with light-duty-type restrictions. But even with this restriction, plaintiff could have performed the essential duties of her job, given that plaintiff's job duties mostly dealt with communicating and interacting with people and were not physically demanding.

42. That upon information and belief, defendants had granted other employees with non-cancer-related impairments long-term extended medical leave for close to or over a year.

43. That defendants' Human Resources Policy manual at page 97 states that "an employee who is unable to return to work after the twelve (12) weeks is completed and has exhausted all other leave may be granted leave without pay for an extended period." The policy does not limit the amount of time or duration of any extended FMLA leave.

44. That moreover, the Rehabilitation Action Act mandates that an employer grant disabled employees reasonable accommodations. Extended medical leave constitutes such an accommodation under the Act and such accommodations are not limited to three (3) weeks.

## FOR A FIRST CAUSE OF ACTION:
## VIOLATION OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794
## TERMINATION BASED ON DISABILITY;

45. That plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 44 hereinabove as fully as if set forth verbatim.

46. That as alleged above, at all pertinent times as defined by the Rehabilitation Act, defendants received financial assistance, monies and/or funds directly (or indirectly) from the federal government during the time it discriminated against plaintiff.

47. That as a result of plaintiff's impairment as set forth above, namely her rectal cancer, plaintiff was substantially limited in one or more major life activity, namely sleeping, sitting, eating, using the restroom and being intimate, among other things.

48. That despite the above, plaintiff could perform the essential duties of her job at defendants with reasonable accommodations in the form of medical leave of a finite duration, but significantly longer than the three (3) weeks defendants provided to her.

49. That as such, plaintiff is disabled as defined by the Rehabilitation Act. Moreover, defendants regarded or perceived plaintiff as being disabled as defined by that Act.

50. That at all times plaintiff performed her job duties at defendants in a manner that met defendants' legitimate expectations.

51. That despite the above, on or about December 8, 2021, defendants fired plaintiff without prior discipline or cause, and for false reasons and/or reasons unworthy of credence, falsely telling plaintiff she was not eligible for any additional leave as required by state and federal laws and that the defendants were "unable to continue to accommodate plaintiff's absences." Moreover, it allowed other impaired or disabled employees, not suffering from cancer (and without the negative stigma, potential financial costs, and the perceived dire or fatal

9

diagnosis that is often associated with cancer) to take longer periods of medical or accommodation leave. In addition to all of the above, at no time did defendants talk with plaintiff about her disabilities and potential accommodations for them, showing defendants were more focused on terminating plaintiff than retaining her.

52. That as such, plaintiff suffered an adverse employment action in that defendants fired her.

53. That defendants violated the Rehabilitation Act by firing plaintiff because of her disabilities and/or perceived disabilities; by failing to enter into dialogue with plaintiff about her disabilities and potential accommodations; and by denying her request for accommodations and refusing to accommodate her.

54. That as a result of defendants' actions as set forth above, plaintiff has been damaged in the form of lost back and future wages, income and benefits, expenses associated with finding other work, medical bills and expenses, severe psychological harm, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, inconvenience, mental anguish, embarrassment, humiliation, loss of professional standing, character and reputation, physical and personal injuries and plaintiff further seeks her reasonable attorney's fees and costs and prejudgment interest.

55. That the defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, knowingly, and with utter disregard for the federally protected rights of the plaintiff, and therefore, if allowed by law, plaintiff seeks to recover punitive damages from the defendants.

## FOR A SECOND CAUSE OF ACTION:
## VIOLATION OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794
## (RETALIATION)
## TERMINATION BASED ON PROTECTED ACTIVITY

56. That plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 55 hereinabove as fully as if set forth verbatim.

57. That as alleged above, at all pertinent times as defined by the Rehabilitation Act of 1973 and during the time period in which defendants discriminated against plaintiff, defendants were receiving federal assistance, monies, and/or funds and, as such, were covered by and subject to the said Act.

58. That on or about October 29 and December 4, 2021, plaintiff engaged in protected activity under the Rehabilitation Act by requesting reasonable accommodations in the form of medical leave and then extended medical leave of a finite duration, but for a longer period of time than the three (3) weeks defendants granted her.

59. That on or about December 8, 2021, just four (4) days after plaintiff last engaged in protected activity and five (5) or six (6) weeks since she first engaged in protected activity, all under the Rehabilitation Act, defendants fired plaintiff without prior discipline or cause, and for false reasons and/or reasons unworthy of credence.

60. That as such, plaintiff suffered an adverse employment action as she was fired by the defendants.

61. That moreover, a causal connection existed between plaintiff's protected activities and her termination based on the relatively short period of time between plaintiff's protected activities and her firing for false reasons and/or reasons unworthy of credence.

62. That as such, the defendants violated the Rehabilitation Act by firing plaintiff in retaliation for engaging in protected activities under the Rehabilitation Act.

63. That as a result of defendants' actions as set forth above, plaintiff has been damaged in the form of lost back and future wages, income and benefits, expenses associated with finding other work, medical bills and expenses, severe psychological harm, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, inconvenience, mental anguish, embarrassment, humiliation, loss of professional standing, character and reputation, physical and personal injuries and plaintiff further seeks her reasonable attorney's fees and costs and prejudgment interest.

64. That the defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore, if permitted by law, plaintiff seeks to recover punitive damages from the defendants.

### FOR A THIRD CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT OF 1973 TERMINATION; FAILURE TO ACCOMMODATE; FAILURE TO ENTER INTO DIALOGUE

65. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 64 hereinabove as fully as if set forth verbatim.

66. That as alleged above, at all pertinent times as defined by the Rehabilitation Act, defendants received federal assistance, monies and funds, directly or indirectly, during the time plaintiff alleges discrimination herein and, thus, defendants are thereby subject to the terms of the said Act.

67. That as a result of plaintiff's conditions and impairments as set forth above, namely her rectal cancer, plaintiff is substantially limited in one or more major life activity, namely sleeping, sitting, using the restroom and being intimate, among other things.

68. That despite the above, plaintiff could perform the essential functions of her job at defendants with reasonable accommodations in the form of medical leave for a finite period of time, but longer than the three (3) additional weeks given to her by defendants after plaintiff's FMLA leave ran out.

69. That as such, plaintiff is disabled as defined by the Rehabilitation Act. Moreover, defendants regarded or perceived plaintiff as being disabled as defined by that Act.

70. That as alleged above, at all times plaintiff performed her job duties at defendants in a manner that met defendants' legitimate expectations.

71. That on or about October 29 and December 4, 2021, plaintiff requested a reasonable accommodation from defendants in the form of medical leave for a finite period of time until she could return to work or until in or around April of 2022. Despite the reasonable nature of plaintiff's requested accommodations, defendants denied plaintiff's request for a reasonable accommodation and/or it granted it but only for an unrealistically short period of time which did not come close to the amount of time plaintiff needed to return to work. Defendants denied plaintiff's request for an accommodation and/or failed to grant it to plaintiff in a meaningful way even though no one at defendants ever entered into dialogue with the plaintiff, or engaged her in an interactive process regarding the nature of her disabilities and potential accommodations (including discussing the duration or amount of leave plaintiff would need), all as required by the Rehabilitation Act.

72. That as such, defendants violated the Rehabilitation Act by failing to enter into dialogue with plaintiff about her disabilities and potential accommodations and by failing to accommodate plaintiff and/or by intentionally granting plaintiff an accommodation that was insufficiently short and unreasonable in duration and one that did not give plaintiff enough time to be able to return to work.

73. That as a result of defendants' actions as set forth above, plaintiff has been damaged in the form of lost back and future wages, income and benefits, expenses associated with finding other work, medical bills and expenses, severe psychological harm, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, inconvenience, mental anguish, embarrassment, humiliation, loss of professional standing, character and reputation, physical and personal injuries and plaintiff further seeks her reasonable attorney's fees and costs and prejudgment interest.

74. That the defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, knowingly, and with utter disregard for the federally protected rights of the plaintiff, and therefore, if permitted by law, plaintiff seeks to recover punitive damages from the defendants.

WHEREFORE, as to plaintiff's First, Second and Third Causes of Action, all under the Rehabilitation Act, plaintiff prays for such an amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, medical bills and expenses, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages (to the extent they are

recoverable), the costs and disbursements of this action, including plaintiff's reasonable attorney's fees and costs, prejudgment interest, and for such other and further relief as the court deems just and proper.

                    HITCHCOCK & POTTS

                    By: *s/A. Christopher Potts*
                    Federal ID No.:  5517
                    222 West Coleman Blvd., Suite 124 #11
                    Mt. Pleasant, SC 29464
                    Telephone:  (843) 577-5000
                    Email:  cpotts@ hitchcock-potts.com
                    ***Attorneys for the Plaintiff***

Charleston, South Carolina
July 6, 2023